**UNITED STATES of America,
Plaintiff,**

v.

**Darrell BILLHEIMER,
et al., Defendants.**

**Case No. C–3–99–402.**

United States District Court,
S.D. Ohio,
Western Division.

March 21, 2002.

Pamela Stanek, Dayton, OH, Lydia Bottome, Washington, DC, for plaintiff.

Darrell Billheimer, Springfield, OH, pro se.

Joan Bilheimer, Springfield, OH, pro se.

John Huber, Springfield, OH, pro se.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 23); PLAINTIFF MAY RENEW MOTION, AS TO ALL COUNTS SET FORTH IN THE COMPLAINT (DOC. # 1), WITHIN 60 DAYS FROM DATE

RICE, Chief Judge.

In this action, in its first count, Plaintiff United States of America ("Government") seeks to reduce three Internal Revenue

Service ("IRS") income tax assessments, on Defendant Darrell D. Billheimer ("D.Billheimer"), to judgment. Three other counts are pled also. In its second count, the Government alleges that D. Billheimer and Joan B. Billheimer ("J.Billheimer") fraudulently transferred certain real property to the Pea Chee Blue Trust ("Trust") to frustrate their creditors, including the Government. In its third count, the Government alleges that the Trust, of which Defendants John Huber ("Huber") and Phil Caldwell ("Caldwell") are trustees, is merely the "alter ego" of D. Billheimer, and that said real property is only nominally held by the Trust, and that, in fact, it is and has always been possessed and controlled by D. Billheimer. In its fourth count, the Government seeks to foreclose liens (which exist by virtue of federal law and on account of the tax assessments) on said real property to enforce the judgment it seeks by way of its first count.

Defendants J. Billheimer, Huber, and Caldwell have been joined as Defendants because of their potential personal and/or fiduciary interests in the real property on which the Government seeks to foreclose.[1]

In a prior entry, the Court directed the Government to file a Motion for Summary Judgment (*see* Doc. # 21), which it has now done. (*See* Doc. # 23.) Its Motion is not opposed by Defendants.

## I. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now

---

**1.** The Government, having been unsuccessful in serving process on Caldwell, moved this Court for limited discovery on the question of whether he was a necessary Defendant. (*See* Doc. # 13.) The Court granted this request.

In turn, D. Billheimer, J. Billheimer, and Huber all acknowledged that Huber was capable of responding on behalf of the Trust. (*See* Doc. # 23 at Ex. A.)

known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

■ Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which

parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Analysis*

### A. *Income Tax Liability for 1992, 1993 and 1994* (Count One)

The Government seeks judgment on the income tax liabilities of D. Billheimer for the tax years 1992, 1993 and 1994. An unrebutted and uncontradicted affidavit of an IRS representative, Janice Weidemann, is attached to the Government's Motion for Summary Judgment (Doc. # 23) as Exhibit F, and demonstrates that D. Billheimer does, in fact, owe back income taxes, plus

interest and penalties, for those years. Interest continues to accrue. Also attached to the Government's Motion are IRS Certificates of Assessments and Payments for the tax years 1992, 1993 and 1994. (*See* Doc. # 23 at Exs. C, D, & E.) In addition, the Government attached a Notice of Deficiency, purportedly sent to D. Billheimer, summarizing in some detail how it calculated the amounts it contends he owes. On March 24, 1997, D. Billheimer was assessed for his outstanding income tax liability, which at that time totaled $96,685.69. (Weidemann Aff. ¶ 2; Doc. # 23 at Exs. (C)-(E).) As of September 27, 2000, his outstanding liability had grown to $144,274.20 (Weidemann Aff. # 4), with, as indicated, interest continuing to accrue.

■ In the absence of evidence to the contrary, Certificates of Assessments and Payments are sufficient proof of the adequacy and propriety of notices and assessments that have been made by the IRS. *See Gentry v. United States,* 962 F.2d 555, 557 (6th Cir.1992). If calculated according to an acceptable procedure, such as the net worth method, the IRS's calculation of taxes owed is presumptively correct. *See United States v. Walton,* 909 F.2d 915, 918 (6th Cir.1990).

■ Herein, the Government contends that D. Billheimer's total indebtedness for the tax years 1992–1994 was $144,274.20, as of September 27, 2000, and that it is entitled to judgment for that amount, plus all interest which has accrued in the interim. The Court finds that there is no genuine issue of material fact on whether D. Billheimer owes income taxes as the Government claims. However, the Court can only make a limited finding with respect to the amount that the Government is claiming. The Certificates of Assessment for 1992, 1993 and 1994, respectively, are sufficient proof of the principal owed by D. Billheimer for those years, inclusive of the penalties and interest that had been assessed as of the date on which the records were generated. Those figures add up to $96,685.69.

Yet, the Court has not been presented with evidence of how the Government calculated the sum of $144,274.20. It might assume that the additional amount the Government claims stems from other interest or penalties, but it cannot know for certain. D. Billheimer was assessed on March 24, 1997, for a total outstanding tax indebtedness of $96,685.69. In its Complaint, the Government claimed that his obligation was $126,986.19, as of April 22, 1999. By September 27, 2000, that figure had grown to $144,274.20. Before the Court can sustain judgment for the Government against D. Billheimer, the Government must demonstrate that it has used an "acceptable procedure" in calculating his outstanding indebtedness. Thus far, evidence of as much has not been adduced with respect to amounts accruing after March 24, 1997.

Accordingly, as to Count One, the Government's Motion is SUSTAINED, insofar as its seeks to reduce its assessment of D. Billheimer to judgment in the amount of $96,685.69, the amount owing on the date of its assessments, March 24, 1997. Insofar as it seeks a greater amount in Count One, said Motion is OVERRULED, without prejudice to renewal should the Government provide sufficient evidence of any interest and/or penalties that have accrued on D. Billheimer's debt since March 24, 1997, and the manner by which it calculated as much.

B. *Fraudulent Conveyance of Real Property* (Count Two)

In Count Two of its Complaint, the Government avers that D. Billheimer and J. Billheimer acquired real property at 7225 Milton Carlisle Road, Springfield, Ohio,

45504, on August 25, 1988, by survivorship deed.[2] (Doc. # 23 at 2; *see id.* at Ex. G.)[3] It further contends that the same property was transferred by general warranty deed to the Trust on December 29, 1994. (*Id.* at 2; *see id.* at Ex. J.) As to the latter transfer, the Government argues that no consideration passed from the Trust to the Billheimers, and that D. Billheimer has at all times resided in and maintained control over the property. Because the transfer took place after D. Billheimer's tax liability for 1993 and 1994 became past due, the Government urges the Court to find that the transfer was made for the fraudulent purpose of preventing the Government (and other creditors) from executing a lien against his property in satisfaction of his outstanding debt. Moreover, the Government urges the Court to declare the transfer void, and recognize that D. Billheimer and J. Billheimer are the true owners of the property at issue.

The Government's basis for this claim is the Federal Debt Collections Procedures Act of 1990, 28 U.S.C. § 3001, *et seq.* ("FDCPA"), and the Ohio Uniform Fraudulent Transfer Act, Ohio Rev.Code § 1336.01, *et seq.* ("OUFTA"). Because the Court finds that the relief available under the FDCPA, *see* 28 U.S.C. § 3306, is substantially similar to that available under the OUFTA, *see* Ohio Rev.Code § 1336.07, and that the statutory factors that are to be considered in determining whether a transfer of property was fraudulently done are substantially similar, *see* 28 U.S.C. § 3304 and Ohio Rev.Code §§ 1336.04 & 1336.05, it finds that there is no need to analyze the issue under the state law, and that it may concentrate its efforts on a review of the federal counterpart.[4]

The FDCPA provides the United States with a host of remedies when seeking to collect a debt from a debtor who has fraudulently transferred property. It may obtain an "avoidance of the transfer ... to the extent necessary to satisfy the debt." 28 U.S.C. § 3306(a)(1). It may obtain "a remedy ... against the asset transferred or other property of the transferee." *Id.* § 3306(a)(2). Finally, it may obtain "any other relief the circumstances may require." *Id.* § 3306(a)(3).

"Debt" includes "an amount that is owing to the United States on account of a ... tax." *Id.* § 3002(3)(B). A "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 3301(3). Where the issue is an alleged fraudulent transfer, the FDCPA recognizes two types of claims. The first of

---

2. *See* Ohio Rev.Code § 5302.17.

3. Exhibit G of the Government's Motion for Summary Judgment is a purported copy of a deed record of Clark County, Ohio, demonstrating a conveyance of the real property, as described, to D. Billheimer and J. Billheimer. This exhibit was attached without the accompaniment of a sworn affidavit or certificate from the records custodian. *See* Fed.R.Evid. 901(b)(7), 902(4); Fed.R.Civ.P. 44(a). As such, the Court cannot consider it pursuant to Rule 56(e). However, because the fact which the Government seeks to establish by its submission of Exhibit G is not contested by Defendants, and because it is not material to the

disposition of this Motion, the Court conditionally accepts it as true for the purpose of ruling on the Government's Motion.

4. "The FDCPA arose to provide a single process by which the United States could collect debts owing to it, thereby circumventing the 50 distinct state debt collection procedures under which it had formerly been compelled to proceed." *Selbe v. United States*, 912 F.Supp. 202, 205 (W.D.Va.1995). In any event, the FDCPA does not foreclose the Government's ability to invoke state laws to effectuate the collection of its debts. *See* 26 U.S.C. § 3003(b).

such is where the debt has arisen prior to the transfer of the property at issue. Where an individual transfers property after incurring a debt to the United States, that transfer will be deemed fraudulent if: 1) the debtor makes the transfer without receiving a reasonably equivalent value in exchange therefor, and the debtor is insolvent at that time, or becomes insolvent as a result of the transfer; or 2) the transfer was made to an insider [5] for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent. *Id.* § 3304(a)(1) & (2).

The second type of transfer giving rise to a fraudulent transfer claim is that where property is transferred by an individual without regard to when that individual incurred her debt to the United States. In analyzing this type of claim, the transfer is to be found fraudulent if: 1) the individual transferred the property at issue with actual intent to hinder, delay, or defraud a creditor; or 2) the individual, without receiving a reasonably equivalent value in exchange for the transfer, a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the transfer, or b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as

they became due. *Id.* § 3304(b)(1). "Intent," as contemplated by § 3304(b)(1), may be inferred upon consideration of all relevant factors, which include, but are not limited to, whether: 1) the transfer was to an insider; 2) the debtor retained control of the property; 3) the transfer was disclosed or concealed; 4) prior to the transfer, the debtor had been sued or threatened with suit; 5) the transfer was of substantially all of the debtor's assets; 6) the debtor absconded; 7) the debtor removed or concealed assets; 8) consideration given for the transfer was of an equivalent value; 9) the debtor was insolvent or became insolvent shortly after the transfer was made; 10) the transfer occurred shortly after a substantial debt was incurred; and 11) the debtor transferred the essential assets of a business to a lienor who then transferred the assets to an insider of the debtor. *Id.* § 3304(b)(2)(A)-(K).[6]

■ "[T]axes are due and owing on the date on which a tax is due to be filed." *United States v. Adams Bldg. Co.,* 531 F.2d 342, 343 (6th Cir.1976); *see also In re Luongo,* 259 F.3d 323, 334 (5th Cir.2001)(holding that a debt arises when the tax obligation accrues, and that the obligation accrues upon the occurrence of the event triggering the liability); *Selbe v. United States,* 912 F.Supp. 202, 205 (W.D.Va.1995).

---

**5.** Where the debtor is an individual, "insider" includes: 1) a relative; 2) a general partner of a relative; 3) the debtor's partnership; 4) a general partner of the debtor; or 5) a corporation of which the debtor is a director, officer, or person in control. 28 U.S.C. § 3301(3)(A).

**6.** These so-called "badges of fraud" have been culled from the common law. *See, e.g., United States v. Leggett,* 292 F.2d 423, 426–27 (6th Cir.1961). In proving fraud in this case, the Government's burden of proof would appear to be the "clear and convincing" standard. While the Sixth Circuit has not addressed this

issue in the FDCPA context, proof of fraud is generally put to this heightened standard. As the Sixth Circuit has noted with respect to a bankrupt's transfer of assets, "it is settled law that fraud is not to be presumed and that something more is required than the mere weight or preponderance of evidence." *Lackawanna Pants Mfg. Co. v. Wiseman,* 133 F.2d 482, 486 (6th Cir.1943). "To establish fraud it is essential that the evidence should be clear, unequivocal and convincing. It must be cogent and leave the mind well satisfied that the allegations are true." *Id.* Herein, the Government apparently agrees with this observation. (*See* Doc. # 23 at 11.)

Herein, the Government argues, first, that the transfer of the real property at issue to the Trust on December 29, 1994, occurred after D. Billheimer's debt to the United States had accrued on account of his tax liabilities for the years 1992 and 1993, which were due and owing as of April 15, 1993, and April 15, 1994, respectively. It argues that the Billheimers received no consideration for the transfer, and that D. Billheimer was insolvent at the time of the transfer, thus rendering the transfer fraudulent under 28 U.S.C. § 3304(a)(1).

██ The argument is not substantiated by the facts in the record. Stated simply, the Court has not been shown credible evidence that D. Billheimer received no consideration for the transfer[7] or was insolvent at the time of the transfer, or became insolvent as a result of the transfer. Accordingly, the Court cannot find that the Government has met its initial burden on summary judgment, such that the burden shifts to Defendants to rebut the Government's evidence. The Court finds that genuine issues of material fact exist as to whether D. Billheimer received consideration for the transfer of the real property at issue, and whether he was insolvent, either at the time of or as a result of said transfer. Thus, as it relates its Fraudulent Conveyance claim (Count Two) brought pursuant to 28 U.S.C. § 3304(a), the Government's Motion for Summary Judgment is OVERRULED. Said overruling is without prejudice to the Government renewing the same, within 60 days from date, should it provide the Court with sufficient facts, as would be admissible at trial, substantiating its allegations that D. Billheimer received no consideration for the transfer at issue, and that he was either insolvent at the time of the transfer, or rendered insolvent on account of the transfer.

In the alternative, the Government argues that the facts demonstrate that D. Billheimer intended to defraud it, thus giving rise to a claim under 28 U.S.C. § 3304(b). It contends that the record demonstrates that at least five "badges of fraud," as enumerated in § 3304(b)(2), apply to D. Billheimer. Specifically, the Government contends that (1) D. Billheimer continues to reside at, and maintain control over, the subject property, (2) he was aware of his tax liabilities at the time of the transfer, (3) the property represented substantially all of his assets at the time of the transfer, (4) he did not receive consideration, and (5) he was either insolvent at the time of, or rendered insolvent as a result of, the transfer. (Doc. # 23 at 12.) Again, the argument is not supported by facts on which the Court may base a judgment in the Government's favor. Even if the Court were to recognize, on the basis of court filings, that D. Billheimer resides on the subject property, the allegations that he was aware of his liability,[8] was

---

**7.** In a later portion of its Motion, concerning its Third Count, the Government states that there "is no dispute that there was in fact no consideration paid by the transferee to the transferor in this case." (Doc. # 23 at 14.) The Court does not find this assertion credible. *First,* the Government's support for this assertion is a purported copy of the General Warranty Deed documenting the transfer from D. Billheimer and J. Billheimer to the Trust (Doc. # 23 at Ex. J). This document has been neither authenticated nor certified. *See* Fed.R.Evid. 901(b)(7) & 902(4); Fed.

R.Civ.P. 44(a). As such, it cannot be considered by the Court when ruling on summary judgment. Fed.R.Civ.P. 56(e). *Second,* even if the Court were to consider the document, nothing therein suggests that valuable consideration was not given. As a point of fact, the document, admittedly the product of boilerplate language, states just the opposite.

**8.** The Government relies on a purported letter from the Billheimers to the IRS office located at 200 West Second Street, in Dayton, Ohio, captioned "Constructive Notice of Non–Tax-

insolvent, received no consideration, exercises control and dominion over the property, and that the property constituted the substantial bulk ·of his assets are unsubstantiated. On the basis of the facts actually established, the Court cannot find that Defendants defrauded the Government in transferring their property to the Trust when they did.

■ The Court finds that genuine issues of material fact exist as to whether D. Billheimer intended to defraud the Government (or any creditor) in transferring the property located at 7225 Milton Carlisle Road, in Springfield, Ohio. Thus, as it relates its Fraudulent Conveyance claim (Count Two) brought pursuant to 28 U.S.C. § 3304(b), the Government's Motion for Summary Judgment is OVERRULED. Said overruling is without prejudice to the Government renewing the same, within 60 days from date, should it provide the Court with sufficient facts, as would be admissible at trial, substantiating its allegations that D. Billheimer intended to defraud it by transferring the property at issue.

C. *Claim that the Trust is the Alter Ego of D. Billheimer* (Count Three)

In Count Three of its Complaint, the Government prays for the Court to find that the Trust is a fictitious entity, and nothing more ·than D. Billheimer's alter ego (or nominee). In praying for such

relief, the Government would have the Court recognize that its tax lien may attach to the property held by the trust, notwithstanding the fact it is not, on the face of things, owned by D. Billheimer. The Court understands this to be an alternative claim to Count Two, as there would be no reason to consider the allegations of Count Three if the Court were to void the transfer in the first instance pursuant to the second count.

■ Where an individual is only the nominal owner of land, i.e., the nominee of another who is the de facto or true owner, and where that true owner is also the Government's debtor, the Government may attach such property held in the nominee's name to satisfy the debt owed it by the true owner. *See Lemaster v. United States,* 891 F.2d 115, 119 (6th Cir.1989); *PBV, Inc. v. Rossotti,* 1999 WL 220123, at *2, 178 F.3d 1295 (6th Cir.1999). Whether the debtor has a property interest or right in the property which the Government seeks to attach is a question of state law. *See Drye v. United States,* 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999).[9] By contrast, whether that right or interest is a "property" right or interest is a question of federal law. *Id.* In *Rossotti,* the Sixth Circuit found that no law has developed in Ohio with respect to nominee ownership. 1999 WL 220123, at *2, 178 F.3d 1295. It noted that factors which have been considered by other courts on the question of

---

payer," and dated April 15, 1993, in which the Billheimers allegedly disclaim any obligation to pay income taxes to the United States, to substantiate its contention that D. Billheimer was aware of his tax obligation, at least for the tax year 1992. Again, the strictures of Fed.R.Evid. 901(b)(7) and 902(4), and of Fed.R.Civ.P. 44(a) and 56(e), have not been followed. In other words, the document has not been authenticated. As such, it would be improvident for the Court to make a finding in favor of the Government on this material issue.

9. The Government acquires a lien on a tax debtor's property by virtue of 26 U.S.C. § 6321; it has a right to levy property by virtue of § 6331. The Supreme Court has construed the language of these "tax statutes" broadly, holding that "Congress meant to reach every interest in property that a taxpayer might have." *Drye,* 528 U.S. at 56, 120 S.Ct. 474 (citation and internal quotation omitted).

who has rights to property, the nominee or the suspected "true" owner, include:

> [P]lacement of property in the name of the nominee in anticipation of liabilities while the transferor continues to exercise control over the property, a close relationship between the transferor and the nominee, the failure to record the conveyance, retention of possession by the transferor, and continued enjoyment by the transferor of the benefits of the transferred property.

*Id.* As is apparent, where suspected nominal ownership stems from a transfer of property, the Court's inquiry looks much the same as that undertaken on the question of whether a transfer was fraudulently made. Not surprisingly, then, the Government's argument on this issue is, for all intents and purposes, the same as that which it put forth as to its fraudulent conveyance claim, to wit, that D. Billheimer continues to maintain control over the property, that no consideration was given for the transfer, and that the transfer was made in anticipation of an assessment of taxes which had, for the years 1992 and 1993, already come due.

 As with the fraudulent conveyance claim, the Court cannot make findings of fact substantiating the Government's Motion for Summary Judgment on this claim. There is, simply, an insufficient basis for concluding at this time that D. Billheimer received no consideration for the transfer to the Trust, or that he continues to exercise control and dominion over the property. On these facts, and any others which may ultimately militate toward a finding that the Trust is the mere nominee of D. Billheimer, such that the Government may attach the property at 7225 Milton Carlisle Road, in Springfield, Ohio, the Court finds that genuine and material issues exist. Accordingly, with respect to the Government's claim that the Trust is the mere alter ego, or nominee, of D. Billheimer

(Count Three), its Motion for Summary Judgment is OVERRULED. Said overruling is without prejudice to the Government renewing the same, within 60 days from date, should it provide the Court with sufficient facts, as would be admissible at trial, substantiating its allegations that the Trust is merely the alter ego, or nominee, of D. Billheimer, and that D. Billheimer is the true owner of the property at issue, such that the property's attachment by the Government, for the purpose of collecting its debt, would be proper.

### D. *Lien Foreclosure* (Count Four)

Subject to certain exceptions not applicable herein, 26 U.S.C. § 6321 provides the Government with a lien on a tax debtor's property, and any rights he may have in any property, for any unpaid tax. "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322.

As provided for by 26 U.S.C. § 6321, the Government has liens against D. Billheimer by virtue of the assessments it made of his tax liability for the years 1992, 1993 and 1994. In Count Four of its Complaint, the Government seeks to have its liens foreclosed on the property at 7225 Milton Carlisle Road. Although it makes no separate and explicit mention of this claim in its Motion, the obvious aim of the Motion is not only for judgment to enter at this time on the amount owed, but for the Court to order that the property at issue be levied upon to satisfy the Government's judgment. Even if the argument were properly presented for the Court's consideration, the Court's discretion to levy upon the property at 7225 Milton Carlisle Road

is foreclosed by its finding that genuine issues of material fact exist on Counts Two and Three. Because it cannot be determined at this time that the property at issue was either fraudulently transferred or transferred to a nominee, such that, in either event, the Government would be warranted in attaching said property for the purpose of collecting its debt from D. Billheimer, it follows that the Court cannot order a foreclosure on its liens at this time. Accordingly, to the extent it can even be interpreted as moving for summary judgment on its fourth claim, for lien foreclosure, the Government's Motion is OVER-RULED.

As with Counts Two and Three, said overruling is without prejudice to the Government renewing the same, within 60 days from date, should it provide the Court with sufficient facts, as would be admissible at trial, substantiating its allegations under the second and third counts, such that it would be proper for the Court to order the lien foreclosure sought herein.

### III. *Conclusion*

For the reasons stated, with respect to the Government's claim for judgment on the tax assessments of D. Billheimer (Count One), for the tax years 1992, 1993 and 1994, its Motion for Summary Judgment (Doc. # 23) is SUSTAINED as to the amount owing on the date of the assessments, March 24, 1997, to wit: $96,685.69. As to any additional amount sought in Count One, the Government's Motion is OVERRULED, without prejudice to renewal, should the Government provide sufficient evidence of any interest and/or penalties that have accrued on D. Billheimer's debt since March 24, 1997, and the manner by which any such additional amount was calculated.

As to its claim to have the transfer of property at 7225 Milton Carlisle Road, in Springfield, Ohio, be found fraudulent and

void (Count Two), its claim to have the Pea Chee Blue Trust recognized as the mere nominee of D. Billheimer (Count Three), and its claim to foreclose its liens on the property at 7225 Milton Carlisle Road (Count Four), the Court finds that there are genuine issues of material fact relating to these claims, such that the Government's Motion is not well taken as to them. Accordingly, on these claims, its Motion is OVERRULED. As noted above, said overrulings are without prejudice to the Government renewing the same, within 60 days from date, should it provide the Court with sufficient facts, as would be admissible at trial, substantiating the allegations contained in Counts Two and Three.