UNITED STATES of America,

v.

William R. RUNNELLS, Jr.

and

Marika L. Runnells, Defendants.

Nos. CRIM.2:88 CR 53-01,
CRIM.2:88 CR 53-02.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 16, 2004.

Mark A. Exley, Assistant United States Attorney, Norfolk, VA, for USA.

Nina J. Ginsberg, Esquire, DiMuro, Ginsberg & Mook, P.C., Alexandria, VA, for Defendants.

## *RESTRAINING ORDER*

REBECCA BEACH SMITH, District Judge.

Defendants William and Marika Runnells were found guilty of wire fraud, racketeering, and other related offenses following a jury trial in 1990. They were sentenced on January 28, 1991. As part of their sentences, each defendant was ordered to pay $500,000 in restitution to the United States. To date the government has only received $10,117 from Marika Runnells and $6,917 from William Runnells.[1] On September 1, 2004, the United

---

1. Gov't Mem. in Supp. of Emergency Mot. at 1.

States filed a Motion for an Emergency Hearing to ask the court "to enter such orders as are necessary to effect the collection of the defendants' restitution obligations."[2] The government brought that motion as a result of William Runnells' recent purchase of a $419,000 house in Miami, Florida.[3] The government also claimed to have evidence that the Runnells were diverting and concealing assets and income in order to avoid paying restitution.

The United States filed a 101–page memorandum on September 9, 2004, to supplement the initial Memorandum in Support of Emergency Motion. This second memorandum provided greater detail about the Runnells' efforts to divert and conceal their income from the government. Specifically, the government identifies eleven corporate entities which it claims are the "alter egos" of the defendants, and through which defendants are diverting and concealing large sums of money. Defendants responded on September 9, 2004, denying the allegations made by the government and requesting leave to file a brief prior to the hearing. However, no further response was filed, and the matter was heard on September 14, 2004.

The government asks this court to (1) determine that defendants are receiving substantial income from self-employment and that they are diverting and concealing earnings; (2) determine that the identified corporate entities are the alter egos of defendants; (3) set an installment payment schedule; (4) restrain defendants from diverting and concealing assets or income; (5) require defendants to submit to the United States Probation Office and to the United States Attorney's Office complete and accurate monthly reports on their financial affairs; (6) direct defendants to liquidate specified items of property, whether owned individually, jointly, or through their corporate alter egos, and pay the proceeds to the Clerk of Court; and (7) recoup all assets fraudulently transferred by defendants and pay the proceeds to the Clerk of Court.

Federal courts are authorized under the All Writs Act, 28 U.S.C. § 1651, to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Supreme Court has held that the Act empowers district courts to issue orders or injunctions "necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).[4]

■ Defendants still owe nearly all of the $1,000,000 in restitution ordered in 1991 by this court to be paid to the government. Based on review of the materials and documents before the court, the authenticity of which is not disputed by de-

---

**2.** Gov't Mot. for Emergency Hearing at 1.

**3.** According to the Settlement Statement and Loan Application provided by Runnells to his probation officer, Runnells paid $11,000 as a deposit and $86,514.28 at settlement towards the purchase price of the house. Gov't Ex. 47. Runnells also lists as assets $300,000 in a Bank of America account, which the government cannot locate. Gov't Mem. in Supp. of Emergency Mot. at 4.

**4.** *See United States v. Abdelhadi*, 327 F.Supp.2d 587 (E.D.Va.2004) (holding that a

court may enter an order restraining defendant from transferring, selling, or disposing of assets where (1) the court is giving effect to a previous order, and (2) there is reason to believe the restraining order is necessary for payment of restitution); *see also United States v. Gates*, 777 F.Supp. 1294, 1296 (E.D.Va. 1991) (recognizing the court's power to freeze defendant's assets prior to sentencing where necessary to ensure defendant would pay court-ordered fines).

fendants,[5] the court finds that defendants are diverting and concealing assets through corporations to avoid paying restitution, the extent to which is not yet determined.

The documents submitted by the government show that defendants own or are involved with numerous corporations which report substantial earnings and assets.[6] The government's analysis of records produced by a few of defendants' corporations shows these corporations earned a total net income of $516,296 from January 1, 2003, through June 30, 2004. The defendants themselves, however, have only reported combined personal income of approximately $5000 to $6000 per month in their required monthly reports to the United States Probation Office.[7] The government has also produced evidence that defendants own directly or have access to valuable assets through these corporate entities, such as a house recently purchased in Florida for $419,000 and fifteen automobiles (many of which are luxury models) owned by defendants' corporations.[8]

A restraining order is appropriate at this time. Accordingly, defendants, and any and all persons working in concert with them, are hereby **RESTRAINED** from transferring, diverting, or concealing any income or assets obtained from any source, including from any corporation with which defendants may be affiliated.

Furthermore, in order to enable the government and the court to determine the income and assets of defendants' various corporations, and the relationships therein, the United States is **DIRECTED** to submit a proposed document production order to this court by Friday, September 17, 2004. The order must direct the corporate entities affiliated with defendants to produce the requested documents within fifteen (15) days of the date of the order, and it must relay that the duty to disclose is a continuing one. Any objections to the document requests must be submitted to the court within the fifteen (15) day production period. The government is also **DIRECTED** to submit a proposed liquidation order to the court by Friday, September 17, 2004, identifying any known assets of defendants that can be readily sold to meet defendants' restitution judgment obligation, giving thirty (30) days to begin the process of liquidating the identified assets. Objections to the proposed liquidation order must be filed with the court by Tuesday, September 21, 2004, or they will be deemed waived.

 Following the document production, the court will then be in a position to assess the remainder of the government's requests. In particular, the court will consider whether to order defendants to make installment payments pursuant to 28 U.S.C. § 3204, which statute allows such

---

**5.** In addition to the two memoranda, the government submitted 152 documents at the September 14, 2004, hearing. Defendants stipulated to the authenticity of the documents, but reserved the right to question in the future their significance or relevance.

**6.** The government has identified at least seventeen corporate entities that are either owned by or affiliated with defendants. One of these corporate entities, Dr. William Runnells D.H.C. Ltd., is the sole shareholder of Phoenix Method One of America, Inc., Phoenix One, Inc., and Rainmaker Business Con-

sultants, which reported a total net income in 2003 of $422,583,00. *See* Gov't Exs. 43, 48, 77. William Runnells, defendant, is the sole officer, director, and shareholder of Dr. William Runnells D.H.C. Ltd.; as such, he has complete control over these corporations' earnings. Gov't Exs. 70, 71.

**7.** Gov't Second Mem. for Orders in Aid of Execution at 5, 14–15, Ex. 48.

**8.** *See id.* at 91–94 (listing the make, model, purchase price, and buyer of the vehicles).

an order upon a showing that the debtor "(1) is receiving or will receive substantial nonexempt disposable earnings from self employment that are not subject to garnishment; or (2) is diverting or concealing substantial earnings from any source, or property received in lieu of earnings ..."[9] The court will also consider whether the various corporations affiliated with defendants are defendants' alter egos such that their corporate veils may be pierced by an outside creditor (namely, the United States).[10] Piercing the veils would allow the court to reach the income and assets of the corporations in order to satisfy the restitution judgment against defendants. Finally, the court will be in a better position to evaluate whether any assets have been fraudulently transferred, as claimed by the government, and to order those assets paid to the United States under 28 U.S.C. § 3306(a).[11]

The Clerk is **DIRECTED** to send a copy of this Restraining Order to counsel for both parties.

**IT IS SO ORDERED.**

**9.** To fix the amount of payments in such an order, the statute directs the court to take into consideration, "after a hearing, the income, resources, and reasonable requirements of the judgment debtor and the judgment debtor's dependents, any other payments to be made in satisfaction of judgments against the judgment debtor, and the amount due on the judgment in favor of the United States." 28 U.S.C. § 3204(a) (1994).

**10.** A corporate veil may be pierced by an outside creditor when there is a showing that (1) the entity has been used by the debtor "to evade a personal obligation, to perpetuate a fraud or a crime, to commit an injustice, or to gain an unfair advantage," and (2) "the unity of interest and ownership is such that the separate personalities of the corporation ... and the individual no longer exist and adherence to that separateness would create an injustice." *C.F. Trust, Inc. v. First Flight Ltd. Partnership*, 338 F.3d 316, 317 (4th Cir.2003)

*Nunc pro tunc* September 14, 2004, 3:25 p.m.[12]

(citation omitted). Clear and convincing evidence is required. *C.F. Trust, Inc. v. First Flight Ltd. Partnership*, 266 Va. 3, 580 S.E.2d 806, 811 (2003).

**11.** That statute provides, in pertinent part: "In an action or proceeding under this subchapter for relief against a transfer or obligation, the United States ... may obtain ... (2) a remedy under this chapter against the asset transferred ... or (3) any other relief the circumstances may require." 28 U.S.C. § 3306(a). The government bears the burden of identifying and proving the fraudulent transfers. *See, e.g., United States v. Billheimer*, 197 F.Supp.2d 1051, 1057 n. 6 (S.D.Ohio 2002).

**12.** The court issued this Restraining Order from the bench at the September 14, 2004, hearing, and indicated that a written order would follow.