# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-2133
No. 10-2162

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Geff Yielding, | * | Appeals from the United States |
| | * | District Court for the |
| Defendant - Appellant, | * | Eastern District of Arkansas. |
| | * | |
| Vespa Beverages LLC; Vespa | * | |
| Holdings, Inc.; Samuel A. Perroni, PA; | * | |
| Shelly H. Koehler, PA, | * | |
| | * | |
| Third Party - Appellants. | * | |

_____

Submitted: March 15, 2011
Filed: October 5, 2011

_____

Before LOKEN and COLLOTON, Circuit Judges, and NELSON,* District Judge.

_____

LOKEN, Circuit Judge.

_____

*The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, sitting by designation.

Geff Yielding was convicted of aiding and abetting a violation of the federal Anti-Kickback Statute and the falsification of a document. The sentence included an order to pay $944,995.84 in restitution to various victims. With his direct appeal pending, the government learned that Yielding would be paid $160,000 to settle unrelated civil litigation. It moved the district court for, *inter alia*, a temporary restraining order (TRO) enjoining "defendant, his attorney or agents from spending, dispersing, investing or otherwise placing the [$160,000] beyond the reach of the United States while this issue is resolved." The district court issued the TRO.

After the government and Yielding submitted extensive documentary evidence and argument, the district court ordered that Yielding "pay $80,000 to the government to apply to his restitution debt," following which the TRO would be dissolved. Yielding and third parties claiming an interest in the settlement proceeds separately appeal the TRO and the payment order. We assigned these appeals and the criminal appeal to the same panel, which heard oral arguments sequentially on the same day. Contemporaneous with this opinion, we are filing an opinion affirming Yielding's conviction, vacating the restitution order, and remanding for further consideration of the restitution issue. We likewise vacate the order directing Yielding to pay $80,000 of his now-vacated restitution liability. We decline to vacate or dissolve the TRO.

## I. The Settlement in Question

The civil litigation grew out of Yielding's dispute with a former business associate, Luther Pate, concerning their complex business venture to manufacture and distribute an energy drink, "Killer Buzz." In March 2010, following his criminal conviction and sentencing, Yielding settled the litigation by entering into a consent judgment incorporating the terms of an Asset Purchase Agreement ("APA").[1] The

---

[1]See Pate v. Yielding, No. 4:09-CV00371, Consent Judgment and Stipulation (E.D. Ark. Mar. 22s, 2010).

APA provided that an entity controlled by Pate would purchase for $160,000 all assets owned in connection with the manufacture and distribution of Killer Buzz by Yielding, Vespa Holdings, Inc. ("VHI"), and Vespa Beverages, LLC ("VBL"). The APA and its schedules listed Yielding as the sole shareholder of VHI, and VHI as the sole member of VBL. The purchase price was paid by a $160,000 check dated March 18, 2010, payable to "Geff Yielding, Perroni & Koehler & Perroni Law Firm," attorneys who represented Yielding, VHI, and VBL in various matters.

In his initial response to the government's motions, filed after the TRO issued, Yielding submitted supporting documents and argued that, although the APA named him as a "Seller," the only assets conveyed in which he had a personal ownership interest were a used copier valued at $200 and several vehicles subject to liens that exceeded their value. He further asserted that the other assets sold belonged to VHI and VBL, and that the sale proceeds were "encumbered by judgment creditors and lien holders that provided services to the corporations." Therefore, he asserted, no part of the settlement proceeds was available to him to apply to his restitution obligation. The government promptly moved for a continuance and discovery to investigate these competing claimants. The district court denied a continuance and scheduled a hearing on the government's pending motion to adjust Yielding's restitution payment schedule.

At the May 7, 2010 hearing, Yielding presented evidence that various judgment creditors, attorneys, and other secured and unsecured creditors of Yielding, VHI, and VBL had superior interests in the settlement proceeds. He also submitted documents reflecting that he transferred his ownership interest in VHI to an irrevocable trust in May 2009, and undated minutes from a "special meeting" of the VHI Board of Directors authorizing VHI to pay "any and all fees and expenses incurred, and to be incurred, as a result of the efforts of Perroni & Koehler and The Perroni Law Firm to defend the corporation, its subsidiary . . . and its President and Secretary, Geffrey A. Yielding." Granted additional time to respond, the government filed a brief

-3-

conceding that Perroni & Koehler had a prior lien on $69,386.06 of the settlement proceeds for services rendered in the Pate litigation. However, the government asserted, Yielding is the owner of the $160,000 payment because VHI and VBL were not operating when the payment was made; the restitution order creates a claim prior or superior to all other creditor claims to the proceeds; and therefore Yielding should be ordered to pay "a large portion" of the remaining $90,614 toward his restitution obligation. VHI, VBL, and attorneys Samuel Perroni and Shelly Koehler (collectively, the "third-party appellants") submitted a brief asserting lack of jurisdiction and contesting the government's contentions that Yielding owns the settlement proceeds and the government's restitution claim has priority.

On May 17, the district court ordered Yielding to pay $80,000 of the proceeds to be applied to his restitution debt. The settlement check "clearly lists Yielding as the recipient," the court explained, "and nothing indicates that there are any lien holders or creditors having priority over the victims who are to be paid restitution." Therefore, the entire $160,000 is "available to" Yielding. Taking into account the interest of the attorney co-payees, the court concluded that fifty percent should be applied to his restitution obligation. Yielding and the third-party appellants then appealed both the grant of a TRO and the payment order.

## II. Validity of the TRO

Third-party appellants argue on appeal,[2] as Yielding argued to the district court, that the court had no subject matter jurisdiction to issue a TRO in this criminal case because the federal All Writs Act is not an independent source of federal jurisdiction.

_____

[2]We reject the government's contention that the third party appellants lack standing to appeal the court's post-conviction orders. A non-party has standing to appeal when it is bound or adversely affected by an injunction. See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 364 F.3d 925, 933 (8th Cir. 2004); In re Piper Funds, Inc., 71 F.3d 298, 301 (8th Cir. 1995).

-4-

The All Writs Act empowers federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. §  1651(a).  This contention is without merit because the district court had jurisdiction to enforce its restitution order.

The Attorney General is responsible for the collection of unpaid restitution. See 18 U.S.C. § 3612(c).  In the Mandatory Victims Restitution Act of 1996, Pub. L. No. 104-132, §§ 201-211, 110 Stat. 1214, 1227-41, Congress granted the Attorney General expanded authority to enforce a sentencing court's restitution order:

> (m)(1)(A)(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or
>
> (ii) by all other available and reasonable means.
>
> \* \* \* \* \*
>
> (n) If a person obligated to provide restitution . . . receives substantial resources from any source, including . . . settlement . . . during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(m), (n); see United States v. Witham, 648 F.3d 40, 45-46 (1st Cir. 2011).  The United States may enforce a restitution order "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."  18 U.S.C. § 3613(a), part of subchapter B of chapter 229.[3]  A civil action under the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001 *et seq.*,

---

[3]An order of restitution is also a lien in favor of the United States, which is valid and enforceable in a manner similar to a tax lien.  18 U.S.C. §§ 3613(c), (d).

is the primary -- but not the exclusive -- procedure for collecting a restitution debt to the United States. See United States v. Timilty, 148 F3d 1, 5 (1st Cir. 1998).

Consistent with the plain import of these statutes, numerous courts have held that a sentencing court has jurisdiction to enforce its restitution order in the criminal case. See United States v. Resnick, 594 F.3d 562, 565, 569 (7th Cir. 2010); United States v. Mays, 430 F.3d 963, 965-66 (9th Cir. 2005), cert. denied, 546 U.S. 1207 (2006); Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 702-03 (2d Cir. 2000); Timilty, 148 F.3d at 3-4; United States v. Scarboro, 352 F. Supp. 2d 714, 716-17 (E.D. Va. 2005). A number of those decisions upheld, as necessary and appropriate in aid of this jurisdiction, orders issued under the All Writs Act restraining a restitution debtor from diverting or concealing assets to avoid paying restitution. See United States v. Simmons, No. 07-30, 2008 WL 336824, at *1 (E.D. Wis. Feb. 5, 2008); United States v. Runnells, 335 F. Supp. 2d 724, 725-26 (E.D. Va. 2004); United States v. Abdelhadi, 327 F. Supp. 2d 587, 598-601 (E.D. Va. 2004). The court in Abdelhadi discussed various statutory mechanisms available to enforce its restitution order and upheld equitable relief under the All Writs Act because none could be "instantly implemented" to ensure that the "defendant's assets [would] not be secreted, wasted or placed beyond the reach of the victim or the government." 327 F. Supp. 2d at 600-01 & nn.20, 21; see also 18 U.S.C. § 3664(m)(1)(A)(ii) (restitution orders may be enforced "by all other available and reasonable means"); 28 U.S.C. § 3202(a) (court may use the All Writs Act "as necessary to support" postjudgment remedies). We agree that a sentencing court has jurisdiction to enforce its restitution order and may use the All Writs Act, when necessary and appropriate, to prevent the restitution debtor from frustrating collection of the restitution debt.

In this case, the government learned that Yielding, an incarcerated defendant with a substantial restitution obligation, was receiving $160,000 to settle unrelated litigation. Given the nature of Yielding's criminal offenses, and the complexity of the civil litigation, the government was legitimately concerned that the settlement

proceeds were an asset that should be applied to Yielding's restitution debt but were at risk of disappearing absent judicial intervention. Although the MVRA provided other potential remedies, the government reasonably concluded that the sentencing court was in the best position to take decisive action to keep the settlement proceeds available until its claim for restitution payment could be determined. Accord Abdelhadi, 327 F. Supp. 2d at 601.

Likewise, the district court reasonably determined that Yielding, as named payee of the check and a party to the APA in his individual capacity, likely had some personal interest in the $160,000 and that a TRO was "necessary to effectuate the criminal restitution order and preserve this asset." As co-payees, Yielding and his attorneys could cash the check and place its proceeds beyond the reach of restitution creditors. The district court did not abuse its discretion in enjoining Yielding and his agents from transferring this liquid asset and in declining to dissolve that injunction until the amount to be applied to his restitution debt has been paid. See United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998) (standard of review).

The third-party appellants argue that we should vacate the TRO because the government and the district court failed to comply with procedural requirements of Rule 65 of the Federal Rules of Civil Procedure. But injunctive relief under the All Writs Act need not rigidly comply with Rule 65's prescriptions so long as the injunction is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." In re Baldwin-United Corp., 770 F.2d 328, 338 (2d Cir. 1985); but cf. Scardelletti v. Debarr, 265 F.3d 195, 212 (4th Cir. 2001) (applying Rule 65 to an All Writs Act injunction issued in a civil case), rev'd on other grounds sub nom. Devlin v. Scardelletti, 536 U.S. 1 (2002). Here, Yielding's attorneys were electronically notified of the TRO motion on March 19, 2010; did not move to dissolve the TRO until April 28; and had an opportunity to argue the motion to dissolve at the May 7 hearing. The third-party appellants had notice of the TRO,

submitted a brief urging that it be vacated, and do not contend that it lacked specificity. The grant of All Writs Act relief was not procedurally infirm.

The third-party appellants further argue that the TRO must be vacated because the district court lacked personal jurisdiction over them in the criminal case. We disagree. "[A] decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Thompson v. Freeman, 648 F.2d 1144, 1147 (8th Cir. 1981), quoting Regal Knitwear Co. v. NLRB, 324 U.S. 9, 14 (1944); see Fed. R. Civ. P. 65(d); United States v. City of Detroit, 329 F.3d 515, 517, 524-25 (6th Cir. 2003) (en banc). The power conferred by the All Writs Act "extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order." United States v. N.Y. Tel. Co., 434 U.S. 159, 174 (1977).

For these reasons, we decline to vacate or dissolve the TRO. That order remains in effect on remand until the district court reconsiders the restitution issues and, in light of that reconsideration, determines whether the TRO should be modified or dissolved.

### III. The Payment Order

Yielding argues on appeal that the district court erred in ordering him to pay one-half of the $160,000 proceeds to be applied to his restitution debt. As we have vacated the restitution order, this payment order must also be vacated. However, we have remanded to the district court for further consideration of the restitution issue. Should the court reimpose a restitution obligation, particularly one that is greater than $160,000, and if the government renews its request for a collection remedy in the criminal case, the payment issue will likely resurface.

We are troubled by the district court's summary disposition of the payment issue. The government invoked a collection method lacking procedural safeguards typically found in statutory creditor remedies. See, e.g., 26 U.S.C. § 7403 (tax lien enforcement); Ark. Code Ann. § 16-66-203 (execution of judgment on encumbered property). But "[t]he Due Process Clause of the Fifth Amendment prohibits the United States . . . from depriving any person of property without 'due process of law,'" which in this context means "that individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" Dusenbery v. United States, 534 U.S. 161, 167 (2002) (administrative forfeiture of property), quoting United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993) (in rem civil forfeiture action). This principle applies whether the government's motions are viewed as an in personam action against Yielding or an in rem action based on the court's power to control disposition of the settlement proceeds. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 796 n.3 (1983).

Yielding may not be ordered to apply the settlement proceeds to his restitution debt simply because the funds are "available" to him. He must be the owner; it must be *his* money. To take an obvious example, a pickpocket with a new victim's money in his hands could not be ordered to apply the money to his prior restitution debt simply because it is "available." So when the district court became aware that the third party appellants claimed ownership interests in the settlement proceeds, those claimants had a due process right to an opportunity to have their competing claims adjudicated.[4] "Ownership interests are defined by the law of the State in which the interest arose." United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Cir. 2003). The district court did not resolve this ownership issue.

_____

[4]The third party appellants grasped the procedural unfairness here but urged an improper fix. The district court does not need personal jurisdiction over the third party appellants to determine whether Yielding owns the settlement proceeds. But it must give third party claimants an opportunity to adjudicate their competing property interests *if they choose to do so*.

If it is determined that the settlement proceeds are owned (in whole or in part) by VHI and/or VBL, Yielding's only interest in those proceeds will be by reason of his ownership of the corporations, unless the court finds, as a matter of state law, that the corporate veil should be pierced. See 18 U.S.C. § 3572(f). That equity interest may well be inferior to the corporations' creditors, so those creditors have property interests requiring notice and an opportunity to be heard. On the other hand, if it is determined that Yielding personally owns all or part of the proceeds, the record suggests that he has other creditors who may have property rights to his assets superior to the government's claim as restitution creditor. See 18 U.S.C. § 3613(c) & (d); 26 U.S.C. § 6323; Minnesota Dep't of Revenue v. United States, 184 F.3d 725, 728 (8th Cir. 1999), cert. denied, 528 U.S. 1075 (2000). Again, these creditors have due process property interests requiring notice and an opportunity to be heard. We take no position on the merits of any of these issues. We simply note that they must be resolved on remand if the government obtains a restitution order and elects to enforce it against the settlement proceeds in the criminal case. Cf. United States v. Ritchie Special Credit Invs., Ltd., 620 F.3d 824, 835 (8th Cir. 2010).

The district court's order dated May 17, 2010, is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____