**UNITED STATES of America,**

v.

**NUMISGROUP INTL. CORP.; Numismatic Asset Strategies, Inc.; Galerie Des Numismatique, Ltd.; Meridian Numismatics, Inc.; Robert Dupurton; and Tom Paull, Defendants.**

No. 00–CR–352.

United States District Court,
E.D. New York.

Oct. 22, 2001.

Loretta Lynch, United States Attorney, Eastern Dist. of N.Y., Central Islip, N.Y., by Michael Cornacchia, Demetri M. Jones, Kevin Mulry, Asst. United States Attorneys, Grover & Bloch, P.C., New York City, by Douglas E. Grover, Richard W. Levitt, of counsel, for defendants Numisgroup International Corp., Numismatic Asset Strategies, Inc., Galerie Des Numismatique, Ltd., Meridien Numismatics, Inc., Robert DuPurton.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This decision involves the interesting issues of the availability of substitute assets in connection with a forfeiture money judgment and a future order of restitution. At issue is approximately 26,600 coins seized by the Government under a search warrant.

Defendant corporate entities Numisgroup International Corp., Numismatic Asset Strategies, Inc., Galerie Des Numismatique, Ltd., Meridian Numismatics Inc., and the President and Chairman of each entity, Robert DuPurton (collectively, "the Numisgroup Defendants"), were convicted after a ten week jury trial of various counts of conspiracy to engage in mail fraud, mail fraud, and conspiracy to engage in wire fraud. Presently before the Court is the Numisgroup Defendants' motion to vacate or modify the Order of the Court restraining approximately 26,600 coins seized and now held by the United States Postal Inspection Service as collateral in anticipation of a restitution order to be imposed at the time of sentencing.

## BACKGROUND

A grand jury returned a 33 count indictment charging the Numisgroup Defendants with conspiracy to commit mail fraud, mail fraud and conspiracy to commit wire fraud. The original indictment dated April 5, 2000, stemmed from numerous complaints made by Numisgroup customers nationwide. On December 20, 2000, the Government filed a superseding indictment containing a forfeiture provision.

Count 1 of the indictment alleged that each Numisgroup Defendant engaged in a conspiracy to commit mail fraud by using the United States Postal Service in furtherance of a scheme to defraud purchasers of collectable coins by fraudulently misrepresenting the grade, value and condition of the coins they sold. Counts 2 through 32 charged various combinations of Numisgroup Defendants with individual

substantive acts of mail fraud involving sales to Numisgroup customers between 1996 and 2000. Lastly, Count 33 alleged that two Numisgroup Defendants engaged in a conspiracy to commit wire fraud.

On March 19, 2001, the jury trial against the Numisgroup Defendants commenced, during which more than 30 witnesses testified and hundreds of individual coins were admitted into evidence. On May 18, 2001, the jury found Dupurton guilty of the conspiracy to commit mail fraud alleged in Count 1, the mail fraud violations charged in Counts 4, 5, 7–13, 15, 17–20, 22, 26–28, 30–32, and the conspiracy to commit wire fraud alleged in Count 33. Of those substantive mail fraud counts, the jury also found that Dupurton engaged in sales solicitations constituting telemarketing under 18 U.S.C. § 2325 with regard to Counts 5 and 10.

On July 6, 2001, after the Numisgroup Defendants waived their right to have the forfeiture phase of the trial heard by the jury, the Court held a forfeiture hearing. The Government argued that except for those coins belonging to defrauded customers, the Court should find that all of the coins seized by the Postal Inspection Service from the Numisgroup Defendants, comprising a collection of more than 26,000 coins, were subject to forfeiture. In support of its position, the Government asserted two theories. First, under a "facilitating property" theory, the Government argued that the Numisgroup Defendants were better able to defraud its customers with a large, ready inventory of coins. Second, advancing a "proceeds" theory, the Government estimated that the ultimate financial loss flowing from the fraud in this case exceeded two million dollars and stated that it will be seeking a money judgment against the Numisgroup Defendants.

Following the provisions 18 U.S.C. § 982(a)(8)(B) and Fed.R.Crim.P. 32.2, the Court determined that only those substantive mail fraud counts where the jury found the offense involved telemarketing (as that term is defined in 18 U.S.C. § 2325) would be subject to forfeiture and give rise to a forfeiture money judgment. The Court ruled that the Government had not proven that the remaining coins constituted property used or intended to be used to commit, to facilitate, or to promote the commission of mail fraud telemarketing offenses within the meaning of 18 U.S.C. § 982(a)(8)(A). The Court also found that the remaining coins did not constitute proceeds obtained, either directly or indirectly, from the mail fraud offenses. Therefore, the Court denied the Government's application for a judgment of forfeiture of the remaining approximately 26,600 coins.

Subsequent to the Court's forfeiture ruling, relying on the All–Writs Act (28 U.S.C. § 1651) and *U.S. v. Ross*, 1993 WL 427415, the Government moved to restrain the non-forfeited approximately 26,000 seized coins, until the time of sentencing as collateral for restitution to be determined at sentencing. As reflected in his net worth statement and in the statements of his counsel, Dupurton's sole asset of any value other than the coins was a rental property located in Holbrook, New York, that was previously pledged as a part of his bail conditions. Therefore, the Government contended that a restraining order was necessary to prevent the Numisgroup Defendants from disposing of the coins prior to sentencing. The Numisgroup Defendants responded by requesting that the Court release the approximately 26,000 seized coins. First, the Numisgroup Defendants argued that the Court was without authority to hold the coins not involved in the convictions in this case for restitution purposes. Second, they asserted that because they have no

assets, their present and future ability to secure counsel for the appeal was detrimentally affected by their inability to draw funding from the coins. After hearing both sides, the Court granted the Government's motion to restrain the coins pending sentencing as collateral for restitution.

On October 18, 2001, the Government submitted a Preliminary Order of forfeiture in the total amount of $1,310,695 pursuant to 18 U.S.C. § 982(a)(8) and Fed. R.Crim.P. 32.2(2). The judgment included the following sums: $622,695 from Numisgroup International Corp.; $402,135 from Numismatic Asset Strategies; $152,055 from Galerie Des Numismatique, Ltd.; and $133,472 from Dupurton. These amounts reflect the forfeiture of property used or intended to be used to commit, to facilitate, or to promote the commission of the telemarketing offenses. The Court signed the Proposed Order of Forfeiture submitted by the Government on October 20, 2001.

Before the Court is the Numisgroup Defendants' motion to vacate or modify the Court's Order of July 6, 2001, restraining the approximately 26,600 seized coins not involved in the convictions and currently in the possession of the Postal Inspection Service.

## DISCUSSION

### A. As to the substitution of assets to satisfy the forfeiture money judgment

■ Although 18 U.S.C. § 982, which governs forfeiture in mail fraud cases, does not explicitly authorize the forfeiture of "substitute assets," subsection (b)(1) of that section states:

> The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding,

shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853).

Furthermore, 21 U.S.C. § 853(p) provides:

> If any of the property described in subsection (a) of this section, as a result of any act or omission of the defendant—
>
> (1) cannot be located upon the exercise of due diligence;
>
> (2) has been transferred or sold to, or deposited with, a third party;
>
> (3) has been placed beyond the jurisdiction of the court;
>
> (4) has been substantially diminished in value; or
>
> (5) has been commingled with other property which cannot be divided without difficulty;
>
> the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5).

Also, once the Court enters a Preliminary Order of Forfeiture, it may order forfeiture of substitute assets to satisfy the forfeiture money judgment under the provisions of Fed.R.Crim.P. 32.2(e) which state:

> (1) On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that:
>
> . . .
>
> (B) is substitute property that qualifies for forfeiture under an applicable statute.

At the forfeiture hearing, the Government estimated that the value of the 26,600 coins held by the Postal Inspection Service is approximately $430,000.00. On the other hand, the Numisgroup Defendants estimate the value of the coins to be

approximately $860,000.00. The Government argues that the Court should forfeit the coins as substitute property because Dupurton claims he has no assets of value except for the 26,6000 seized coins and a rental property in Holbrook, New York, that was previously pledged as a portion of his bail. Conceding that the retention of substitute assets to satisfy a forfeiture order is within the Court's discretion under Fed.R.Crim.P. 32.2(e), the Numisgroup Defendants respond that any right the Government might otherwise have to forfeit the coins as substitute assets should yield to the "compelling interest" of Dupurton to "secure his right to counsel ."

The Court finds that the forfeiture of substitute property—namely, the approximately 26,600 coins seized and currently held by the Postal Inspection Service—is authorized and warranted in this case. *See U.S. v. Baker,* 227 F.3d 955, 970 (7th Cir.2000) (suggesting that the Government can satisfy part of a $4.4 million forfeiture award with substitute assets); *U.S. v. Bennett,* 2000 WL 1505986, *2 (S.D.N.Y.2000) (holding that the forfeiture of substitute property was appropriate where the Government established that $109 million connected with a money laundering scheme was well in excess of the value of the substitute property). Irrespective of which estimate of the value of the coins is more accurate, both calculations, $430,000.00 by the Government and $860,000.00 by the Numisgroup Defendants, fall well below the proposed forfeiture money judgment of $1,310,695.00 submitted by the Government. Accordingly, the restraint of these coins by the Government is lawful.

**B. As to the restraint of assets as collateral in anticipation of an order of restitution to be entered at the time of sentencing**

Although it appears that the forfeiture money judgment will absorb the entire value of the 26,600 coins, nevertheless, the Court will address the issue of whether the coins may be restrained, post-conviction, as collateral in anticipation of an Order of Restitution to be entered at the time of sentencing or whether the coins or a portion of them should instead be released to Dupurton so that he may pay for counsel.

The Numisgroup Defendants argue that the Court is without statutory authority to restrain an asset in anticipation of an Order of Restitution. Assuming that the Court decided not to retain the coins as substitute assets to satisfy the forfeiture money judgment, the Government responds that, under the authority of *U.S. v. Ross,* 1993 WL 427415, the Court may restrain the coins in anticipation of a substantial Order of Restitution to be entered at sentencing. The Numisgroup Defendants assert that the Second Circuit's decision in *U.S. v. Gotti,* 155 F.3d 144 (2d Cir.1998), trumps Judge Martin's decision in *Ross.*

In *Ross,* the defendant, who was found guilty by a jury on RICO charges but not yet sentenced, moved to vacate a restraining order previously entered in that case to the extent that it exceeded the RICO forfeiture amount. The Government sought to have the court impose a restraining order pending sentencing that would reach all of the defendant's assets. The Government argued that the court had the authority to issue the requested restraining order in aid of a restitution order under the general authority of the All–Writs Act which states: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

Acting under the authority of the All–Writs Act, the *Ross* court ordered the

restraint of the defendant's assets for less than one week while the defendant awaited sentencing, although 18 U.S.C. § 3663(h) (repealed and modified in 18 U.S.C. § 3664(m)(1)(A)(i)) explicitly authorized the court to enter a restraining order only at the time of sentencing. The *Ross* court relied on an interpretation of the All Writs Act from language in *In re Baldwin–United Corporation*, 770 F.2d 328, 338 (2d Cir. 1985) where the Second Circuit stated: "An important feature of the All–Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the Court's ability to reach or enforce its decision in a case over which it has proper jurisdiction ." From that proposition, the *Ross* court concluded:

> It is clear that the Court would have the power to enter a restraining order at the time of sentencing. *See* 18 U.S.C. § 3663(h). There is no logic to the position that the Court is powerless to enter a restraining order after a jury has found a defendant guilty of participating in a large-scale fraud simply because sentencing has been delayed so that a pre-sentence report may be prepared.

*Ross*, 1993 WL 427415 at *1.

In support of their respective positions, both parties cite to *Gotti;* however, they disagree over what role that decision should play in the resolution of this matter. In *Gotti*, in connection with a 60 count indictment of defendants charged with violations under RICO, the Government sought a post-indictment, pretrial restraining order forfeiting money linked to the defendants' racketeering activities. *Id.* at 146. In the event that the money became unavailable for forfeiture, the Government concomitantly sought the forfeiture of substitute assets. *Id.* As a matter of first impression, the Second Circuit held that 18 U.S.C.1963(d)(1)(a), the RICO restraint provision expressly authorizing the post-indictment, pretrial restraint of directly forfeitable assets, was unambiguous and that Congress did not intend to authorize the *pretrial* restraint of substitute assets. *Id.* at 149–50 (emphasis added).

Based on the *Gotti* decision, the Numisgroup Defendants argue that the Government is not entitled to restrain the subject coins in anticipation of an Order of Restitution because no statute expressly permits such restraint. On the other hand, the Government deduced from *Gotti* that the Court has the necessary authority to order the *post-conviction* restraint of substitute assets held as collateral for restitution because the Second Circuit expressly prohibited only the pretrial restraint of those assets.

At the forfeiture hearing, the Government asserted that Numisgroup customers lost approximately $3.3 million as a result of the Numisgroup Defendants' fraudulent conduct. That figure includes losses stemming from the substantive mail fraud telemarketing offenses as well as losses incurred as a result of the conspiracies. Unlike the defendants in *Gotti*, the Numisgroup Defendants no longer are bathed with the presumption of innocence. A jury found, beyond a reasonable doubt, that the Numisgroup Defendants were guilty of conspiracy to engage in mail fraud, various substantive counts of mail fraud, and conspiracy to engage in wire fraud. The Numisgroup Defendants are now awaiting sentencing and they occupy the same position as the defendant in *Ross*. Because sentencing and a substantial Order of Restitution is imminent, in light of Dupurton's representation that he has virtually no assets at his disposal, in the Court's view, its authority to restrain the coins in anticipation of the Order of Restitution is not precluded by *Gotti*. Accordingly, the Court denies the Defendant Numisgroups' motion to vacate the Order

of Restraint with respect to the subject approximately 26,600 coins, based on the future Order of Restitution.

There are special circumstances in this case; namely the restraint of the 26,600 coins as substitute assets for the forfeiture money judgment and the restraint of the same coins as collateral for the Order of Restitution. Because the forfeiture money judgment proceeds apparently revert to the Government and the restitution is for the benefit of the victims, the Court will have to consider the equitable considerations, weighing in favor of the victims. The Court has asked the Government to make the proceeds of the money judgment available to the victims, and awaits the Government's response in this regard. The Court will make a final determination as to the legal, equitable and fair division of the proceeds of the 26,600 coins at the time of sentencing of these defendants.

### C. As to the contention that the coins should be released to pay attorney fees

As set forth above, the Numisgroup Defendants request that the 26,600 coins or a part of them, be released to serve Dupurton's "compelling interest" of "secur[ing] his right to counsel." The Numisgroup Defendants cite no authority in support of their request.

In *U.S. v. Monsanto,* 491 U.S. 600, 602, 109 S.Ct. 2657, 2659, 105 L.Ed.2d 512 (1989), the Supreme Court considered whether the federal drug forfeiture statute authorized a district court to enter a pretrial order freezing assets, where the defendant seeks to use those assets to pay counsel fees. In *Monsanto,* the indictment alleged that the respondent had directed a large-scale heroin enterprise and that three specific assets—a home, an apartment, and $35,000 in cash—had been accumulated by the respondent as a result of his narcotics trafficking and were subject to forfeiture under 21 U.S.C. § 853(a). *Id.,* at 602–03, 109 S.Ct. 2657. The District Court had granted the Government's motion for a restraining order freezing the aforementioned assets pending trial and the petitioner moved to vacate the restraining order, to permit him to use the frozen assets to retain an attorney. *Id.,* at 603, 109 S.Ct. 2657. In a major ruling on a controversial issue, the Supreme Court held that "a pretrial restraining order does not 'arbitrarily' interfere with a defendant's 'fair opportunity' to retain counsel." *Id.,* at 603, 109 S.Ct. 2657 (quoting from *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). *See also U.S. v. Miller,* 2001 WL 300536, *3 (2d Cir.2001); *S.E.C. v. Coates,* 1994 WL 455558, *3–4, (S.D.N.Y.1994).

Here, the Court finds that the reasoning in *Monsanto* applies with even greater force where we are past the pretrial proceedings and the defendants have been convicted. While it is true, as the Numisgroup Defendants argue, that it is important that they retain competent counsel, the rights of the victims to be compensated and made whole again, particularly in light of *Monsanto,* are of paramount importance. Notwithstanding Dupurton's assertion of his inability to pay counsel, it is of course the fact that should Dupurton find himself without the necessary funds to retain appellate counsel, competent CJA appellant counsel can and will be appointed.

### CONCLUSION

For the foregoing reasons the Numisgroup Defendants' motion to vacate or modify the Order of the Court restraining the 26,600 coins presently held by the Government is DENIED.

**SO ORDERED.**